UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONCIERGE AUCTIONS, LLC,
a Florida Limited Liability Company,

      Plaintiff,

                               CASE NO.: 12 Civ. 81000

vs.

GEA,INC. a Nevada Corporation,
d/b/a GRAND ESTATES AUCTION
COMPANY,

and

VALARIA DEVINE,

      Defendants.
_____/

## COMPLAINT FOR DAMAGES, PUNITIVE DAMAGES, AND INJUNCTIVE RELIEF

Plaintiff, Concierge Auctions, LLC, sues defendant GEA, INC., d/b/a GRAND ESTATES AUCTION COMPANY and VALARIA DEVINE and makes the following allegations:

1.     Concierge Auctions coordinates and operates auctions for high value residential properties. In certain circumstances, Concierge Auctions works directly with the seller. Other times, Concierge Auctions works with the seller's agent. In either case, Concierge Auctions sets the auction date, helps to publicize the auction, and conducts the auction so the sale of the home can be concluded. In exchange for these services, Concierge Auctions receives payment at the successful conclusion of the auction.

2.   As a result of a Strategic Alliance Agreement with Realogy Services Group, LLC, Concierge Auctions is a preferred provider of auction services to Sotheby's International Realty Affiliates, LLC- a world wide network of real estate professionals who sell, among other things, luxury residential real estate.   Concierge Auctions also works with other prominent brokerage firms around the nation to market and auction luxury residential real estate.

3.   Grand Estates Auction Company, Valaria Devine, and other unknown individuals who are affiliated with Grand Estates have deliberately engaged in a conspiracy: to discourage individuals from retaining Concierge Auctions to sell their properties, to discourage real estate brokers and brokerage firms from working with Concierge to auction properties, and to encourage Realogy Services Group and its subsidiary Sotheby's International Realty Affiliates to refuse to renew its preferred provider relationship with Concierge Auctions.

4.   As part of this conspiracy, the defendants have sent a series of electronic mail messages and other communications to: Concierge Auctions' customers, realtors who work with Concierge Auctions, Sotheby's International Realty Affiliates' agents, and senior managers at Sotheby's International Realty Affiliates.   Some of these electronic messages include false and defamatory statements about Concierge and one of its senior managers. Other messages directly encourage real estate brokers and Sotheby's International Realty Affiliates' to end its business relationship with Concierge Auctions-- including an electronic mail message to Sotheby's International Realty Affiliates, Chief Executive Officer, President, and Chief Marketing Officer.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

5.   All of these messages inaccurately, maliciously, and malevolently depict Concierge Auctions as a company that is engaging in illegal activity, fraudulent business practices, and inappropriate business behavior.

6.   It further appears that an individual affiliated with Grand Estates has used a false identity to send defamatory messages that are designed to interfere with Concierge's relationships with individual sellers and Sotheby's International Realty Affiliates.

7.   By acting in this manner, the defendants have engaged in: conspiracy; tortious interference with Concierge Auctions' business relationships; false, defamation *per se*, and deceptive and unfair trade practices.

### The Parties

8.   Plaintiff Concierge Auctions is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.   None of the Members of Concierge Auctions are citizens North Carolina or Nevada.  Further, no individual or Member associated with the Members of Concierge Auctions are citizens of Nevada or North Carolina.

9.   Defendant GEA, Inc. (which conducts business at Grand Estates Auction Company) is a Nevada Corporation with its principal place of business and corporate offices in North Carolina.

10.   Defendant Valaria Devine is the Chief Executive Office of Grand Estates Auction Company.  Ms. Devine is a resident of North Carolina.

### Jurisdiction and Venue

11.   This Court has jurisdiction over this matter under 28 U.S.C. § 1332, *et seq*.  The Plaintiff is a Florida limited liability company (with no Members in Nevada or North Carolina,

and its Members have no connection to Nevada or North Carolina).   One Defendant is a Nevada Corporation with its principle place of business in North Carolina, and the other Defendant is a resident of North Carolina.   The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12.   Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### Facts Relevant to All Counts

13.   Since early 2011, Grand Estates has been interfering with the business of Concierge Auctions.   Initially, Ms. Devine and other Grand Estates representatives told individuals and entities that had business relationships with Concierge Auctions that: a)  Concierge Auctions was conducting its business unlawfully in California and Colorado, and b) that Concierge Auctions did not possess the appropriate licenses to conduct business in California or Colorado.

14.   In March 2011, an attorney for Concierge Auctions sent a letter to Grand Estates demanding that Grand Estates immediately stop engaging in this conduct and cease disseminating this false, deceptive, and defamatory information.   In response, Grand Estates denied any wrongdoing and refused to take action.

15.     Starting in and around August 2012, it became apparent that Grand Estates, Ms. Devine, and others were again actively and unlawfully trying to harm Concierge Auctions and its business interests.

16.   Prior to August 14, 2012, John Doe (an individual posing as John Paul Ellison) signed up for and obtained a "gmail" electronic mail account from Google.  Google is based in

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

Mountain View, California which is in Santa Clara County, California.  Upon information and belief, John Doe is an employee, affiliate, or agent of Grand Estates Auctions.

17.    Also prior to August 14, 2012, John Doe signed up for and obtained an account with a company called VerticalResponse.   VerticalResponse is based in San Francisco, California. Among other things, VerticalResponse allows its account holders to send out large numbers of electronic mail messages simultaneously.

18.    On August 14, 2012, John Doe sent an electronic mail message to an unknown number of affiliates and agents of Sotheby's International Realty and certain customers of Concierge Auctions.  At least one of the individuals who received this electronic mail message lives in Palm Beach County, Florida, and received the message there.  Upon information and belief, other individuals in Florida received this electronic message.  John Doe sent this email using his gmail account and the VerticalResponse system.

19.    John Doe's August 14, 2012 message was clearly designed to interfere with Concierge's business relationships by deceptively depicting Concierge Auctions in a negative light to business partners and customers.  Specifically, the electronic message indicated that a senior member of the Concierge management team had filed for bankruptcy.  The message also suggested that this Concierge Senior Manager was involved in a major real estate fraud which resulted in a criminal prosecution.  The message further suggested that Sotheby's International Realty Affiliates should not be affiliated with Concierge and the Concierge Senior manager.  The August 14, 2012 electronic message said:

Dear Sotheby's affiliates and agents.

I came across an interesting article concerning [Concierge's Senior Manager], co founder of Concierge Auctions, who's declared bankruptcy recently.    What

concerns me as a buyer and seller of real estate is why Sotheby's would be affiliated with Concierge Auctions?  Furthermore there are other articles that in essence tarnish the reputation of Sotheby's by being affiliated with [Concierge's Senior Manager] and Concierge Auctions.  Last but not least how is it possible that [Concierge's Senior Manager] made so little last year and this year while Concierge Auctions claim so many sales?  It just doesn't add and it makes one wonder the veracity of Concierge Auctions claims.

Here are the articles of interest

http://www.heraldtribune.com/article/20120814/ARTICLE/308149990?tc=ar

http://www.heraldtribune.com/article/20100419/COLUMNIST/4191060

---

Click to view this email in a browser
http://hosted.verticalresponse.com/1309717/b87d5091ae/TEST/TEST/

If you no longer wish to receive these emails, please reply to this message with "Unsubscribe" in the subject line or simply click on the following link:

http://cts.vresp.com/u?b87d5091ae/TEST/TEST

---

This message was sent by John Paul Ellison using VerticalResponse

xyz
2252 Ocean Drive
Bermuda, Florida xzy
Bermuda

Read the VerticalResponse marketing policy:
http://www.verticalresponse.com/content/pm_policy.html

20.   As an attachment to this email, John Doe included an untitled article which appears to have been published in a Tampa, Florida newspaper on March 6, 2012.   This article describes the criminal trial of defendants in case involving "fraudulent real estate deals." Although the article mentions the name of Concierge's Senior Manager, the article specifically says that Concierge's Senior Manager was not "charged with  any crime."

21.   On August 16, 2012, John Doe sent a second electronic message to the Concierge customer in Palm Beach County, Florida.  This August 16, 2012 electronic mail message was again titled: "Co-Founder of Concierge Auctions files bankruptcy."   The message said: "additional information about [Concierge's Senior Manager] and some of the things he's been associated with.  This is a transcript of a Federal Court case."

22.   The clear intent of this message was to bolster the impression that Concierge's Senior Manager was actively involved in a large scale real estate fraud.  The fraud identified in this email is the same case described in the article attached to the first email.

23.   Also on August 14, 2012, John Doe sent the first electronic message to a Montana real estate broker who works with Concierge.  In response, the Montana real estate broker sent an electronic mail message to John Doe and asked: "Hi- who is sending me this info? curious? Thanks."

24.   John Doe responded to the Montana real estate broker by electronic mail: "As I stated I am a buyer and seller of real estate and was doing some research on this company [Concierge Auctions].  Was just surprised when I found this information online and in court records."

25.   The Montana real estate broker responded: "There have been so many people that have had such hard financial times over the past couple of years and are trying to recover - it is unfortunate to be airing their dirty laundry."

26.   John Doe responded with the following email on August 16, 2012:

I would not consider being named as a participant in one of the largest real estate fraud cases ever as being a financial crisis other than ones own making.  Read the court document where he was specifically named in this case in which people are going to jail and where sellers and buyers were hurt by their actions.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

> I would not be interested in participating in any auction where people like this are involved in.  The country doesn't need any more Bernie Madoffs.  I would imagine as the broker of record you'd be interested in having all the facts about whom you're associated with.  Hopefully your seller is aware of all this.

> JP Ellison,

27.  Around this time, John Doe sent another electronic mail message to a Wyoming real estate broker.  This electronic mail message said:

> Read the court document where he was specifically named in this case in which people are going to jail and where sellers and buyers were hurt by their actions.  He's being named in one of the biggest fraud cases in federal court.

> I would not be interested in participating in any auction where people like this are involved in.  The country doesn't need any more Bernie Madoffs.  I would imagine as the broker of record you'd be interested in having all the facts about whom you're associated with.  Hopefully your seller is aware of all this.  If you're not concerned about this thats your perogative [sic].

28.  The purpose of these emails is also clear.  John Doe was trying to disparage Concierge Auctions and to discourage realtors, customers, and others from doing business with Concierge Auctions.  In particular, John Doe was again communicating that the Concierge Senior Manager was actually involved in the mortgage fraud case from the west coast of Florida.  In fact, Concierge's Senior Manager had no involvement in perpetrating the fraud.

29.  John Doe appears to have taken several deliberate steps to obscure his identity when sending out these emails.  First, John Doe apparently sent out the electronic message under the false name with a false address: Jean Paul Ellison of 2252 Ocean Drive, Bermuda, Florida, Bermuda.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

30.   Although the email indicates that the sender is a "buyer and seller of real estate," Concierge is not aware of any individual named John Paul Ellison who has contact with Concierge.  Also, there does not appear to be a city in Florida named Bermuda, nor does there appear to be a city in Bermuda called Florida.

31.   Second, John Doe opened an electronic mail account with Google under this apparently false name.  An individual can open a Google "gmail" account without providing any verifiable identification information.  Accordingly, sending an electronic message through a "gmail" account based on a fake name makes it difficult to identify the true source of an electronic message.

32.   Third, John Doe sent the electronic message through VerticalResponse-- a provider of internet marketing services.

33.   VerticalResponse provides numerous services to individuals and small businesses. One VerticalResponse service allows individuals and entities to send electronic messages to large numbers of electronic mail accounts at once.  Most small businesses and individuals do not have computer resources with this capability.  As a result, this service allows individuals and small businesses to "get the word out" much more efficiently and effectively than if they relied on their own equipment.

34.   In this case, though, using VerticalResponse also allowed John Doe to place another layer of protection over his/her identity.   Specifically, the message only indicates that it was sent from John Paul Ellison to John Paul Ellison.

35.   On August 17, 2012, Ms. Devine, the Chief Executive Officer of Grand Estates, sent an electronic mail message the Chief Executive Officer of Sotheby's International Realty

Affiliates, Mike Good.  Ms. Devine addressed the message to Sotheby's International Realty

Affiliates President and Chief Marketing Officer.   This email was a clear attempt to cause

Sotheby's International Realty Affiliates to stop doing business with Concierge.   The email

says:

> As the CEO of Grand Estates Auction Company it has recently been brought to
> my attention recent news articles that involve Sotheby's International Realty and
> its affiliation with Concierge Auctions.  It is my belief that you would want to be
> apprised of what I believe is serious damage being done to the Sotheby's brand.
> The Sotheby's brand has always been highly respected and admired.  Over the last
> few years we have heard from a number of Sotheby's brokers who have been
> turned off to the auction process after having done business with Concierge
> Auctions, based on questionable sales tactics including but not limited to
> fraudulent misrepresentation, shill bidders, and phony sales, it appears from the
> enclosed news stories that all of the bad happenings are about to come to light.
> The link below which is in addition to the two attachments, mentions you by
> name.

> http://www.heraldtribune.com/article/20100419/COLUMNIST/4191060

> I have enclosed two recent news stories that I implore you to read. Based on my
> perception, the Sotheby's brand is being severely damaged.   You decide for
> yourself.   I cannot believe that no matter how much money Chad Roffers owes
> Sotheby's you would want this type of affiliation to continue.  Please forgive me
> for what may appear to be a bold and brash move on my part but I hope you will
> understand that their business practices not only damage you but they damage my
> industry as a whole.

> Grand Estates Auction Company between 2001 and 2010 performed over 32
> successful auctions just in the Vail Valley.  After Concierge Auctions  came to the
> Vail Valley and performed five auctions, claiming to sell all of them,
> misrepresenting to the Sotheby's brokers and sellers the outcome of their own
> auctions, serious damage was done to the integrity of the auction industry.  They
> actually sold only one out of five in spite of their claims and press releases.  We
> have seen this pattern repeat itself in other markets throughout the USA where we
> do business.

> Recently, A Sotheby's broker stated to us she chose Concierge because they were
> the Sotheby's affiliate and now is shocked to learn of their constant
> misrepresentations and questionable business practices.   She is afraid for her

10

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

license and states she wished she had checked them out more carefully but felt it wasn't necessary because after all they claim on their website and through letters issued by corporate that they are the preferred auction services provider for Sotheby's International.   You may want to look into what some of their past auction brokers are saying.

Grand Estates Auction Company is in the process of developing new alliances with other major real estate firms, as these firms are looking for a way to incorporate the auction process into their sales methodology.  They are all aware of what has transpired in the alliance between Sotheby's and Concierge Auctions and want to be assured that they will not be subjected to the same type of collateral damage and that's why they have chosen to affiliate themselves with Grand Estates.  We believe that with the proper spin and with the proper public relations agency Grand Estates Auction Company can help you to rectify the past, present and future damage to your brand.

On a final note, last Sunday one half of their past sales vaporized from their website.  On Monday, the story about [a Concierge Senior Manager's] Bankruptcy appeared. It appears to be a rather convenient coincidence, based on his stated income.    I can assure you that Bankruptcy Court judges have federal Investigators.  My belief is that every time Sotheby's is named it is another blow to the brand.  Last but not least with the combination of the fraud case, this story is only going to get bigger.

If you would like to discuss this matter I am available at your convenience.

Val DeVine, CEO
Grand Estates Auction Co.
2359 Perimeter Pointe Pkwy
Suite 270
Charlotte, NC 28208

36.    Within days of sending this email, Ms. Devine sent a similar email and similar messages to other individuals who are Concierge customers or real estate brokers who do business with Concierge.

37.   For example, Ms. Devine sent an electronic message to a Concierge Customer in Wyoming.  The clear point of the email was to convince this customer to move her business to Grand Estates instead of Concierge Auctions.  The message says:

11

Carolyn, Ask yourself this.  Do you really want to sell?   They really do sell some, but more than 65% or thereabouts are never really closed.  We sell and close 93% of everything we sign.  We will get you sold and closed.  We go to new markets all of the time and hit home runs.  Give yourself a chance to really sell.  We broke a record in Whitefish Montana, we had never been there before.  I can obtain for you tomorrow a copy of our Past broken Records list. WE HIT Homeruns.

Sent from my iPhone

38.   This message contains a factually false statement.   Specifically, it is not true that more than 65% of Concierge Auctions sales fail to result in a closed transaction.

39.    Prior to receiving this message, the Wyoming customer committed to sell her property through Concierge Auctions.  After receiving this message, the individual indicated she would not sell through Concierge Auctions.   In an attempt to save this agreement, Concierge Auctions has spent considerable funds and has suffered damages.

40.   Similarly, in or around early September, Ms. Devine sent an electronic mail message to a Concierge Auctions customer in Palm Beach County, Florida.   In this message, Ms. Devine accused Concierge of engaging in fraud and encouraged the customer to move his business to Grand Estates.

41.   Further, Ms. Devine left a voice message on the telephone of another Concierge Auctions' customer who lives in North Carolina and Florida.   In the voice message, Ms. Devine encouraged this customer not to continue doing business with Concierge Auctions.

42.    On August 27, 2012, an attorney for Concierge Auctions sent a second cease and desist letter to Grand Estates and demanded that Grand Estates stop the conduct described in this complaint.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

43.    Grand Estates responded to the letter through a lawyer in New York City.    This lawyer denied that there was any basis for a claim against Grand Estates, and Grand Estates has taken no remedial action to undo the damage Grand Estates and Ms. Devine have caused.

44.    Grand Estates, Val Devine, and John Doe have injured the business reputation of Concierge Auctions, and have caused customers to sever their business relationship and contracts with Concierge Auctions at least temporarily.    A loss of these business relationships and contracts has caused Concierge Auctions to lose profits.    Furthermore, Concierge Auctions has incurred significant expenses in attempting to rectify the situation that Grand Estates, Val Devine, and John Doe has created.

## COUNT I
## CONSPIRACY

45.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 above.

46.    The Defendants collectively and acting in concert with each other and other persons and/or entities, agreed to take collective action: to interfere with Concierge Auctions rights under contracts and/or advantageous business relationships that Concierge Auctions maintained with its clients, customers, and business partners; to defame Concierge Auctions; and to engage in false, unfair, and deceptive trade practices.

47.    To further the conspiracy, the Defendants engaged in overt acts: to interfere with Concierge Auctions rights under contracts and/or advantageous business relationships that Concierge Auctions maintained with its clients, customers, and business partners; to defame Concierge Auctions; and to engage in false, unfair, and deceptive trade practices.    For example, as forth above: Ms. Devine sent the electronic message to Sotheby's International

Realty Affiliates Chief Executive Office, President, and Chief Marketing Officer; John Doe sent the email to the Florida customer, Ms. Devine sent the electronic message to the Concierge Auctions' customer in Florida, and Ms. Devine left the voice mail message to the Concierge Auctions' customer from North Carolina and Florida.

48.    The Defendants carried out these acts of conspiracy willfully, wantonly, in a malicious manner, and with reckless disregard for Concierge Auction's rights.   Further, the Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result to Concierge Auctions and, despite that knowledge, the Defendants intentionally pursued that course of conduct, resulting in damage to Concierge.

WHEREFORE Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for damages, punitive damages, attorneys' fees, costs, and any other relief that the Court deems appropriate.

## COUNT II
## TORTIOUS INTERFERENCE

49.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 above.

50.   Concierge Auctions maintained the contracts and business relationships identified above in this complaint.    In particular, Concierge Auctions has a preferred provider relationship with Sotheby's International Realty Affiliates, and had an agreement to sell the property of the Wyoming customer.    In addition, Concierge Auctions had a continuing business relationship with the customer from North Carolina and Florida.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

51.   The Defendants were aware of these contracts and business relationships.

52.   The Defendants interfered with the contracts and caused injury to these business relationships through its unprivileged conduct.

53.   In addition, Concierge Auctions is about to lose business with Sotheby's International Realty Affiliates and the Wyoming Customer because of the Defendants' conduct, and the Defendants refuse to stop.  Moreover, the Defendants' course of conduct will result in the loss of business for Concierge Auctions.

54.   As a direct result of Grand Estates' conduct, Concierge Auctions has incurred expenses in attempting to rectify the situation created by Grand Estates, lost the profits that Concierge Auctions could have earned by performing the contracts to their termination, has been injured in its business reputation and has lost the possibility of renewing the contracts and beneficial business relationships it had.

55.   The Defendants carried out these acts of conspiracy willfully, wantonly, in a malicious manner, and with reckless disregard for Concierge Auctions' rights.  Further, the Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result to Concierge Auctions and, despite that knowledge, the Defendants intentionally pursued that course of conduct, resulting in damage to Concierge.

WHEREFORE Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other relief that the Court deems appropriate.

## COUNT III
## INJUNCTIVE RELIEF

56.  Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 above.

57.    The Defendants have engaged in tortious interference with Concierge Auctions contracts and business relationships in a manner that justifies injunctive relief.

58.  Concierge Auctions maintained the contracts and business relationships identified above in this complaint.    In particular, Concierge Auctions has a preferred provider relationship with Sotheby's International Realty Affiliates, and had an agreement to sell the property of the Wyoming customer.    In addition, Concierge Auctions had a continuing business relationship with the customer from North Carolina and Florida.

59.  The Defendants were aware of these contracts and business relationships.

60.    The Defendants interfered with the contracts and caused injury to these business relationships through its unprivileged conduct.

61.    In addition, Concierge Auctions is about to lose business with Sotheby's International Realty Affiliates and the Wyoming Customer because of the Defendants' conduct, and the Defendants refuse to stop.  Moreover, the Defendants' course of conduct will result in the loss of business for Concierge Auctions.

62.    If the Court does not enjoin the Defendants from continuing with this behavior, Grand Estates will continue its course of conduct and Concierge Auctions will continue to suffer irreparable harm including the loss of its contracts, the destruction of its business relationships, and the destruction of its business and good will.

16

WHEREFORE Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for an injunction restraining the Defendants from continuing to interfere with Concierge Auctions' business, reasonable attorneys' fees and costs, and for any other relief that the Court deems appropriate.

## COUNT IV
## DEFAMATION *PER SE* OF BUSINESS REPUTATION

63.  Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 43 above.

64. The Defendants have created, developed, and published various false and defamatory statements as set forth in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint on more than one occasion of and concerning Concierge Auctions over the internet and to third parties throughout Florida and the United States.

65.  As a direct and proximate result of the publication of the Defendants' statements set forth in in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint Concierge Auctions has suffered substantial damages, including but not limited to pecuniary loss and injury to its reputation.

66.  The Defendants' statements set forth in in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint impute conduct, characteristics or a condition incompatible with the proper exercise of Concierge Auctions' lawful business.  As such, these statements are libelous and defamatory *per se*; and pursuant to Florida law, Concierge Auctions is presumed to have been damaged by these statements.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

67.     The Defendants carried out these acts of conspiracy willfully, wantonly, in a malicious manner, and with reckless disregard for Concierge Auction's rights.  Further, the Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result to Concierge Auctions and, despite that knowledge, the Defendants intentionally pursued that course of conduct, resulting in damage to Concierge.

WHEREFORE Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other relief that the Court deems appropriate.


**COUNT V**
**INJUNCTIVE RELIEF**

68.  Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 43 above.

69.     The Defendants have engaged in defamation per se in a manner that justifies injunctive relief.

70.  The Defendants have created, developed, and published various false and defamatory statements as set forth in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint on more than one occasion of and concerning Concierge Auctions over the internet and to third parties throughout the Florida and the United States.

71.   As a direct and proximate result of the publication of the Defendants' statements set forth in in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint Concierge Auctions has

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

suffered substantial damages, including but not limited to pecuniary loss and injury to its reputation.

72.   The Defendants' statements set forth in in paragraphs 19, 21, 26, 27, 35, and 37 of the complaint impute conduct, characteristics or a condition incompatible with the proper exercise of Concierge Auctions' lawful business.   In this way, these false and defamatory statements are injurious to Concierge Auctions' business reputation.  As such, these statements are libelous and defamatory *per se*; accordingly pursuant to Florida law, Concierge Auctions is presumed to have been damaged by these statements.

73.   If the Court does not enjoin the Defendants from continuing with this behavior, Grand Estates will continue its course of conduct and Concierge Auctions will continue to suffer irreparable harm including the loss of its contracts, the destruction of its business relationships, and the destruction of its business and good will.

WHEREFORE Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for an injunction restraining the Defendants from continuing to interfere with Concierge Auctions' business, reasonable attorneys' fees and costs, and for any other relief that the Court deems appropriate.


## COUNT VI
## FALSE AND DECEPTIVE TRADE PRACTICES

74.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 above.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

75.  By the acts described above, the Defendants have engaged in unfair, deceptive, and unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq*.

76.  The Defendants unconscionable and deceptive acts and practices were designed to inflict injury and harm upon Concierge Auctions and to gain an unfair business advantage.

77.   The Defendants have sent false, defamatory, and disparaging information to Concierge Auctions' customers and its business associates.  They have deliberately created the impression that Concierge Auctions and one of its Senior Managers are engaged in criminal acts, fraudulent business practices, and inappropriate business practices.   Moreover, the Defendants have deliberately used the internet's mass mailing capability and cloaked their efforts in a veil of anonymity to supercharge their efforts and make them harder to stop.

78.  In short, the Defendants have maliciously and malevolently impugned Concierge Auctions' business operations and reputation to secure an improper business advantage.  The Defendants have also maliciously and malevolently interfered with Concierge Auctions' business relationship with Sotheby's International Realty Affiliates and the individual customers described in the complaint.

79.  The Defendants have injured Concierge Auctions through their deceptive and unfair trade practices in violation of Fl. Stat. §501.204 in an amount that is currently unknown, but in excess of $75,000.00.

80.  Additionally, Concierge Auctions is entitled to recover its attorneys' fees and court costs pursuant to Fla. Stat.  §§ 501.2105 and 501.211.

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
2 South Biscayne Blvd., Suite 3570, Miami, FL  33131  Tel. (305) 361.5500, Fax (305) 428.9532

CASE NO.12 Civ.  81000

WHEREFORE, Concierge Auctions demands judgment against GEA, Inc. d/b/a Grand Estates Auction Company and Valaria DeVine for damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other relief that the Court deems appropriate.

**<u>JURY DEMAND</u>**

Concierge Auctions demands a trial by jury for all matters that may be tried before a jury.

Dated:  September 17, 2012

> **THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.**
> *Attorneys for Concierge Auctions, LLC*
> 2 South Biscayne Blvd., Suite 3570
> Miami, Florida  33131
> Telephone: (305) 361-5500
> Facsimile:  (305) 428-9532
>
> By: _____/s/ Stephen James Binhak_____
>            Stephen James Binhak, Esq.
>            Florida Bar No. 0736491
>            binhaks@binhaklaw.com